**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(B)(6)**

# **TABLE OF AUTHORITIES**

**Cases**
*Ackerman v. Food-4-Less*, 1998 U.S. Dist. LEXIS 8813, 1998 WL 316084 (E.D. Pa. June 9, 1998) .................................................................................................................................. 4, 6
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 3
*Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910 (3d Cir. 1982) ............................................. 6, 8
*Coles v. Ritz Carlton Residences*, 2013 U.S. Dist. LEXIS 156134, 2013 WL 5842958 (E.D. Pa. Oct. 29, 2013) ..................................................................................................................... 4, 5
*Dorval v. Moe's Fresh Mkt.*, 2018 U.S. Dist. LEXIS 153520, 2018 WL 4323910 (D.V.I. Sept. 10, 2018) ................................................................................................................................... 6
*Eck v. Oley Valley Sch. Dist.*, 2019 U.S. Dist. LEXIS 137743, 2019 WL 3842399 (E.D. Pa. Aug. 15, 2019) ......................................................................................................................... 6, 7, 8, 9
*Gregory v. Dillard's, Inc.*, 565 F.3d 464 (8th Cir. 2009) .............................................................. 5
*Hart v. O'Malley*, 436 Pa. Super. 151, 647 A.2d 542 (Pa. Super. 1994), *aff'd*, 544 Pa. 315, 676 A.2d 222 (Pa. 1996) .............................................................................................................. 7, 9
*Henderson v. Jewel Food Stores, Inc.*, 1996 U.S. Dist. LEXIS 15796, No. 96- C-3666, (N.D. Ill. Oct. 23, 1996) ......................................................................................................................... 4, 6
*Martin v. Comunale*, No. 03-06793, 2006 U.S. Dist. LEXIS 1692, 2006 WL 208645 (E.D. Pa. Jan. 18, 2006) ........................................................................................................................ 7, 8
*Martin v. Enter. Rent-A-Car*, 2003 U.S. Dist. LEXIS 1191, 2003 WL 187432 (E.D. Pa. Jan. 15, 2003) ....................................................................................................................................... 3, 5
*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973) ........................................................ 3, 5
*Miller v. Comcast*, 724 F. App'x 181 (3d Cir. 2018) ................................................................. 6, 8
*Morris v. Office Max*, 89 F.3d 411 (7th Cir. 1996) ........................................................................ 6
*Powell v. Independence Blue Cross, Inc.*, No. 95-2509, 1997 U.S. Dist. LEXIS 3866 (E.D. Pa. Mar. 26, 1997) ....................................................................................................................... 3, 5
*Pride v. Wal-Mart Stores East, LP*, 2019 U.S. Dist. LEXIS 194283, 2019 WL 5862171 (E.D. Pa. Nov. 7, 2019) ............................................................................................................................ 3
*Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548 (3d Cir. 2002) .......................................... 4
*Rolla v. Westmoreland Health Sys.*, 438 Pa. Super. 33, 651 A.2d 160 (Pa. Super. 1994) .......... 7, 9
*Singh v. Wal-Mart Stores, Inc.*, 1999 U.S. Dist. LEXIS 8531, 1999 WL 374184 (E.D. Pa. June 9, 1999) ................................................................................................................................. 3, 4, 5
*St. Francis College v. Al-Khazraji*, 481 U.S. 604 (1987) ........................................................... 3, 5
*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993) ................................................................. 4, 5
*Stewart v. Rutgers, The State University*, 120 F.3d 426 (3d Cir. 1997) ..................................... 3, 5
*Tatis v. Allied Interstate, LLC*, 882 F.3d 422 (3d Cir. 2018) ......................................................... 3
*Wallace v. Graphic Mgmt. Assocs.*, 2005 U.S. Dist. LEXIS 3298, 2005 WL 527112 (E.D. Pa. Mar. 3, 2005) .......................................................................................................................... 3, 4

**Statutes**
42 U.S.C. §1981 ................................................................................................................. 1, 3, 4

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MOHSSIN BAKKALI | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 2:20-cv-03440 |
| | : | |
| WALMART, INC. | : | |
| Defendant. | : | JURY TRIAL DEMANDED |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
<u>COMPLAINT PURSUANT TO RULE 12(B)(6)</u>**

Defendant, Walmart Inc. (hereinafter "Walmart" or "Defendant") by and through its undersigned counsel, Law Offices of McDonnell & Associates, P.C., submits the following Brief in support of its 12(b)(6) Motion to Dismiss.

### I.   MATTER BEFORE THE COURT

Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6).

### II.   STATEMENT OF QUESTIONS INVOLVED

1.   Should Plaintiff's Section 1981 claim be dismissed due to Plaintiff's failure to plausibly plead that Walmart interfered with his contractual rights based on intentional racial or ethnic discrimination?

*Suggested Answer:   Yes.*

2.   Should Plaintiff's intentional infliction of emotional distress claim be dismissed in its entirety based on Plaintiff's failure to state a claim that Walmart acted in an extreme or outrageous manner or caused him any physical injury?

*Suggested Answer:   Yes.*

1

### III.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Mohssin Bakkali (hereinafter "Plaintiff") initiated this cause of action by filing a Complaint in this Court on July 14, 2020. *See* a copy of Plaintiff's Complaint attached hereto as Exhibit "A." Plaintiff filed an Affidavit of Service stating that he served Walmart on July 23, 2020. *See* a copy of Plaintiff's Affidavit of Service attached hereto as Exhibit "B." Plaintiff's Complaint asserts claims for racial/ethnic discrimination pursuant to 42 U.S.C. §1981 (hereinafter referred to as "Section 1981") and common law intentional infliction of emotional distress.

Plaintiff is a Moroccan male who was raised Muslim. *See* Exhibit "A," ¶10. Plaintiff claims that he visited Walmart Store #5649 in Warrington, Pennsylvania on March 25, 2019 to purchase supplies for his limousine business. *See* Exhibit "A," ¶¶ 10, 12. As he entered the Store, he alleges that a Walmart associate, who has been identified as an older African-American female named "Brenda," stated the following:

- "Jesus Christ is the only savior";
- "Any other believers are wrong"; and
- "[Allah] is teaching you tough things to go around the world to do."

*Id.* at ¶¶ 14, 18. Due to the fact that Plaintiff bracketed the word "Allah," it appears that the associate did not actually make any reference to "Allah"; and the actual word she used is not identified anywhere in the Complaint. Plaintiff makes no allegation that the associate commented on either his race or his ethnicity; rather, the alleged comments appeared to be related to the associate's own religious beliefs. Plaintiff alleges that he asked the associate to repeat herself after she said "Jesus Christ is the only savior" and asked her to apologize for her statement. *Id.* at ¶ 18. After this apparent verbal altercation, Plaintiff alleges that a single associate began to

"track" him around the Store. *Id.* at ¶ 20. Plaintiff obtained an item and proceeded to the checkout area; but alleges that due to the "harassment" and "surveillance," he was so distressed that he did not make a purchase. *Id.* at ¶¶ 20-21. Plaintiff further alleges that he reported the incident to a manager named "Megan," who has been identified as an hourly customer service supervisor, and she took no immediate action to address the associate's behavior. *Id.* at ¶¶ 21-22.

For the reasons set forth herein, Plaintiff's claims fail as a matter of law and the Complaint should respectfully be dismissed with prejudice.

## IV. LEGAL ARGUMENT

### A. Standard of Review

The precedent within the Third Circuit and the Supreme Court of the United States is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss." *Pride v. Wal-Mart Stores East, LP*, 2019 U.S. Dist. LEXIS 194283, *4-5, 2019 WL 5862171 (E.D. Pa. Nov. 7, 2019) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (*quoting Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (*quoting Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (*quoting Iqbal*, 556 U.S. at 678).

In this case, Plaintiff's Complaint fails to plausibly plead that he was prevented from entering into a contract due to racial or ethnic discrimination; or that Walmart intentionally inflicted emotional distress. Accordingly, his Complaint should be dismissed in its entirety.

**B.     Plaintiff's Complaint Fails to State a Plausible Claim of Race/Ethnic Discrimination Upon Which Relief Can Be Granted.**

Section 1981 of the Civil Rights Act of 1866 provides as follows:

> **(a) STATEMENT OF EQUAL RIGHTS**
> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> **(b) "MAKE AND ENFORCE CONTRACTS" DEFINED**
> For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> **(c) PROTECTION AGAINST IMPAIRMENT**
> The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

42 U.S.C. §1981. "To state a claim under Section 1981, plaintiffs must allege that: (1) they are members of a racial minority; (2) defendants intended to discriminate on the basis of race; and (3) the discrimination concerned the making and enforcing of a contract." *Coles v. Ritz Carlton Residences*, 2013 U.S. Dist. LEXIS 156134, *4, 2013 WL 5842958 (E.D. Pa. Oct. 29, 2013) (*citing Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d Cir. 2002)).

The statute has been interpreted to protect against racial and ethnic discrimination only. *See Wallace v. Graphic Mgmt. Assocs.*, 2005 U.S. Dist. LEXIS 3298, *10, 2005 WL 527112 (E.D. Pa. Mar. 3, 2005) (where the plaintiff was barred from pursuing national original

4

discrimination claims under Section 1981). Religion is not a protected trait under Section 1981. *Martin v. Enter. Rent-A-Car*, 2003 U.S. Dist. LEXIS 1191, *20, 2003 WL 187432 (E.D. Pa. Jan. 15, 2003) (granting summary judgment to the defendant on the plaintiff's religious discrimination claim under Section 1981) (*citing Powell v. Independence Blue Cross, Inc.*, No. 95-2509, 1997 U.S. Dist. LEXIS 3866, *17 (E.D. Pa. Mar. 26, 1997)); *see also St. Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987) (holding that a plaintiff of Middle Eastern descent could assert a Section 1981 claim if he proved that his intentional discrimination was based the fact that he was born an Arab, but not his national origin or religion).

Section 1981 claims are analyzed pursuant to the burden-shifting framework set forth in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Singh v. Wal-Mart Stores, Inc.*, 1999 U.S. Dist. LEXIS 8531, *15-19, 1999 WL 374184 (E.D. Pa. June 9, 1999) (*citing Stewart v. Rutgers, The State University*, 120 F.3d 426, 431-32 (3d Cir. 1997)). To establish a *prima facie* Section 1981 case in the retail context, the plaintiff must show that he is a member of a protected class; that he attempted to make, enforce or secure the performance of a contract; that he was denied the right to do so; and, that the opportunity to make, enforce or secure the performance of a contract for like goods or services remained available to similarly situated persons outside the protected class." *Singh*, *supra* at *17. "The ultimate burden of proving that a defendant engaged in intentional discrimination remains at all times upon the plaintiff." *Id.* at *18-19 (*citing St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)).

Several courts of appeals have addressed Section 1981 claims in the retail context and have found that there "must have been interference with a contract beyond the mere expectation of being treated without discrimination while shopping." *Coles*, 2013 U.S. Dist. LEXIS 156134 at *6-7 (*citing Gregory v. Dillard's, Inc.*, 565 F.3d 464, 470 (8th Cir. 2009)); *see also Morris v.*

*Office Max*, 89 F.3d 411, 414 (7th Cir. 1996) (where the plaintiffs' Section 1981 claims were rejected because they were denied neither admittance nor service to the retail store at issue, were not asked to leave the store, and it was questionable whether they intended to enter into a contractual relationship just by shopping in the store). A plaintiff must show that she "was ***actually prevented***, ***and not merely deterred***, from making a purchase or receive service after attempting to do so." *Ackerman v. Food-4-Less*, 1998 U.S. Dist. LEXIS 8813, *6-7, 1998 WL 316084 (E.D. Pa. June 9, 1998) (*citing Henderson v. Jewel Food Stores, Inc.*, 1996 U.S. Dist. LEXIS 15796, No. 96- C-3666, (N.D. Ill. Oct. 23, 1996)) (emphasis added).

In *Ackerman*, an African-American woman was detained by retail store security after she was accused of attempting to steal spices. She was detained for two hours, during which she was not allowed to leave the office, make phone calls, contact her attorney, or tell her husband where she was. *Ackerman*, 1998 U.S. Dist. LEXIS 8813 at *3. She was not allowed to use the bathroom and defecated in her pants as a result. *Id.* at *4. She was subjected to numerous racial slurs during her detention, including that she could not possibly be married to her husband because she was African-American and he was Caucasian. *Id*. The Court found the allegations sufficient to establish that the store's actions were based on her race. *Id.* at *5-6. The Court also found that she may have been precluded from purchasing groceries due to her two-hour detainment. *Id.* at *7-10. *See also Dorval v. Moe's Fresh Mkt.*, 2018 U.S. Dist. LEXIS 153520, 2018 WL 4323910 (D.V.I. Sept. 10, 2018) (finding a meritorious Section 1981 claim where a white grocery store owner refused to sell groceries to a black plaintiff and banned him from the store, and did not refuse business to or ban white customers).

Unlike the plaintiff in *Ackerman*, who was subjected to severe racial slurs and detained against her will for two hours, Plaintiff merely claims that an associate made three Christianity-

based comments, and that another unidentified associate was looking at him after this apparent verbal altercation with an older female associate. There are no facts in the Complaint to suggest that the associate made racial or ethnic slurs toward Plaintiff. There are also no facts suggesting that the other unidentified associate did anything other than look at Plaintiff, which any person may do when they hear an argument or commotion.

Clearly, Plaintiff took offense to the associate's alleged remarks; however, his Complaint fails to allege facts to support a finding that the comments constituted intentional discrimination on the basis of race or ethnicity. Based on the plain language of the Complaint, the associate made no comments whatsoever regarding Plaintiff's race or ethnicity. Rather, she appeared to be expressing her own Christian beliefs. It is further unclear whether the associate referenced "Allah" since this word is bracketed in the Complaint. *See* Exhibit "A" at ¶ 18. However, if she did, Islam is practiced by individuals from diverse racial and ethnic backgrounds. Likewise, individuals with Plaintiff's racial or ethnic makeup may practice a variety of religions or be non-religious. There are no facts to support a theory that the associate specifically targeted Plaintiff based on his Moroccan or Middle Eastern ancestry. The comments alleged in the Complaint pertained solely to religion, which is not a protected trait under Section 1981.

Plaintiff's Complaint further fails to allege that he was actually prevented from entering into a contract. Nowhere in the Complaint does Plaintiff allege that Walmart actually interfered with his ability to make a purchase or denied him that right. Plaintiff was not detained, asked to leave, or discouraged from making a purchase in any manner. In the Complaint, Plaintiff merely seems to allege that he was offended and decided not to buy anything. Plaintiff's Complaint is also devoid of any allegations that the associate treated him differently than other, similarly-situated customers that did not possess his protected trait. There are simply no facts alleged to

support a theory that this particular gentleman was targeted based on his race or ethnicity, or that the associate made no similar comments toward non-Middle Eastern customers.

The Complaint, as alleged, does not state a plausible claim that Walmart interfered with Plaintiff's contractual rights based on his race or ethnicity. At most, it alleges that an associate, perhaps inappropriately, expressed her Christian beliefs to customers as they entered the Store. Therefore, Plaintiff's Section 1981 claim is implausible on its face and fails as a matter of law.

### C. Plaintiff's Complaint Fails to State a Plausible Claim of Intentional Infliction of Emotional Distress Upon Which Relief Can Be Granted.

To prove IIED under Pennsylvania state law, a plaintiff must establish the following elements: "(1) the conduct must be ***extreme and outrageous***; (2) the conduct must be ***intentional or reckless***; (3) it must cause emotional distress; and (4) the distress must be ***severe***." *Eck v. Oley Valley Sch. Dist.*, 2019 U.S. Dist. LEXIS 137743, *19-20, 2019 WL 3842399 (E.D. Pa. August 15, 2019) (*citing Miller v. Comcast*, 724 F. App'x 181, 182 (3d Cir. 2018) (*quoting Bruffett v. Warner Commc'ns, Inc.*, 692 F.2d 910, 914 (3d Cir. 1982)) (emphases added).

"To satisfy the first element, conduct must be 'extreme and outrageous' defined by Pennsylvania law to be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as ***atrocious***, and ***utterly intolerable in a civilized society***.' '***It is for the court to determine*** in the first instance whether the conduct is extreme and outrageous, such that recovery may be permitted.'" *Eck*, *supra* at *20 (citations omitted) (emphases added).

In addition to alleging sufficiently severe conduct, "to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, ***plaintiffs must allege physical injury***." *Id.* at *20 (*citing Martin v. Comunale*, No. 03-06793, 2006 U.S. Dist. LEXIS 1692, 2006 WL 208645, at *12 (E.D. Pa. Jan. 18, 2006) (*citing Rolla v. Westmoreland Health*

8

<206>
<277>
<400>
<500>
<600>
<700>
<800>
<900>

*Sys.*, 438 Pa. Super. 33, 651 A.2d 160, 163 (Pa. Super. 1994); *Hart v. O'Malley*, 436 Pa. Super. 151, 647 A.2d 542, 554 (Pa. Super. 1994), *aff'd*, 544 Pa. 315, 676 A.2d 222 (Pa. 1996) ("[I]t is clear that in Pennsylvania, in order to state a claim under which relief can be granted for the tort of intentional infliction of emotional distress, the plaintiffs must allege physical injury.")) (emphasis added).

In the *Eck* case, public school students brought a claim for intentional infliction of emotional distress against their music director. They alleged that she used her position of authority to bully them by "demeaning, intimidating, and humiliating them in the presence of their peers and by encouraging their peers to engage in demeaning, intimidating, and humiliating behavior towards [the Students], including the use of expletives to describe [Students]." *Id.* at *20. They claimed that she "created a threatening environment of fear and intimidation towards [them]," made false statements about them having violent tendencies, and timed her allegations to purposefully secure their suspension and deprive them of their involvement in the school play and drama club. *Id.* at *21-22.

The Court found that accepting the allegations as true, they did "not rise to the level of 'extreme and outrageous conduct' sufficient to support a claim for intentional infliction of emotional distress." *Id.* at *22. The Court explained that Pennsylvania law finds conduct to be extreme and outrageous "only in the ***most egregious*** situations, such as mishandling of a corpse, reckless diagnosis of a fatal disease, and having sexual contact with young children." *Id.* (emphasis added). Accordingly, the Court granted the teacher's 12(b)(6) motion to dismiss. *Id.* at *21-22.

Similarly in this case, Plaintiff's Complaint is devoid of any facts to support an argument that the accused associate intended any harm to Plaintiff; or that she acted in an extreme or

9

outrageous manner that was beyond the bounds of human decency. In *Eck*, the teacher's conduct allegedly took place over an extended period of time, was directed to multiple students, and was specifically designed to demean the students and interfere with the students' ability to participate in extracurricular activities. Even then, the Court found no basis for an IIED claim. Here, the conduct alleged was limited to one isolated occasion where an associate allegedly made stray Christianity-based comments in a store foyer. Although Plaintiff claims that he experienced emotional distress, there are no facts whatsoever to support a finding that Plaintiff experienced the serious emotional distress accompanied by physical injury that is required to prevail on an IIED claim. Therefore, his IIED claim fails as a matter of law and should respectfully be dismissed.

## V.    CONCLUSION

Plaintiff's Complaint fails to state plausible claims of race discrimination under Section 1981 and intentional infliction of emotional distress. Therefore, Plaintiff's Complaint should respectfully be dismissed in its entirety with prejudice.

<br>

Respectfully submitted,
**MCDONNELL & ASSOCIATES, P.C.**

Dated: August 13, 2020         By:      */s/ Gwyneth R. Williams*
Patrick J. McDonnell, Esquire
Attorney I.D. No. 62310
Email: pmcdonnell@mcda-law.com
Gwyneth R. Williams, Esquire
Attorney I.D. No. 319219
Email: gwilliams@mcda-law.com
500 Route 70 West
Cherry Hill, NJ 08002
(T) 856.429.5300 (F) 856.310.7900
*Attorneys for Defendant*