# EXHIBIT "A"



AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the

Eastern District of Pennsylvania

| | | |
|---|---|---|
| MOHSSIN BAKKALI | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| | ) | |
| v. | ) | Civil Action No.   20-cv-03440-JCJ |
| | ) | |
| | ) | |
| WALMART, INC. | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

MARC L. ACKERMAN
BRODSKY & SMITH, LLC
TWO BALA PLAZA
SUITE 510
BALA CYNWYD, PA 19004

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:   7/17/2020 _____     s/*Stephen Gill*
                                          *Signature of Clerk or Deputy Clerk*

Kate Barkman, Clerk of Court
U.S. District Court, Eastern District of PA

Date Served: 7/23/2020
Time Served: 11:44
or Server: DS 4715161

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   20-cv-03440-JCJ

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):* _____
_____

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____

I declare under penalty of perjury that this information is true.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MOHSSIN BAKKALI, §<br>§<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>WALMART, INC., §<br>§<br>Defendant. §<br>§ | Case No._____<br><br><br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mohssin Bakkali ("Plaintiff" or "Mr. Bakkali"), by his attorneys, files this action against Defendant, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.      This action has been initiated by Plaintiff for violations of 42 U.S.C. §1981. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### PARTIES

2.      Plaintiff is a citizen of the United States and a resident of the Commonwealth of Pennsylvania, residing at 3427 Conrad Street, Philadelphia, PA 19129.

3.      Defendant Walmart, Inc. ("Walmart" or the "Company") is a Delaware corporation that engages in the retail and wholesale operations in various formats worldwide. The Company operates through three segments: Walmart U.S., Walmart International, and Sam's Club. It operates supercenters, supermarkets, hypermarkets, warehouse clubs, cash and carry stores, discount stores, drugstores, and convenience stores; membership-only warehouse clubs; e-

commerce Websites, such as walmart.com, jet.com, shoes.com, and samsclub.com; and mobile commerce applications.

4.     Walmart's fiscal year 2019 revenue was in excess of $500 billion.  The Company employs over 2 million associates worldwide.

5.     Walmart operates a store known as the Warrington Supercenter Walmart (Store No. 5649) located at 299 Valley Gate Drive, Warrington PA 18976 (the "Store").

6.     At all relevant times, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of 42 U.S.C. § 1981 of the Civil Rights Act of 1866, as amended.

8.     Personal jurisdiction exists over Defendant because Defendant conducts business in or maintains operations in this District or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because all acts and/or omissions giving rise to the claims set forth herein occurred in this District, and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

**FACTUAL BACKGROUND**

10.     Mr. Bakkali is Middle Eastern, was born in Morocco and was raised Muslim, which is part of his ethnicity.

11.     Mr. Bakkali emigrated to the United States in 2004 and became a citizen in 2009. Plaintiff is the owner/operator of a limousine service.

12.     On March 25, 2019, at approximately 2:30 pm, Mr. Bakkali went to the Warrington Supercenter Walmart (Store No. 5649) located at 299 Valley Gate Drive, Warrington PA 18976 (the "Store"), to purchase certain products for his limousine business.

13.     On March 25, 2019, Mr. Bakkali was dressed for work in a three-piece suit and also wore a knit cap due to the cool temperatures.

14.     After Mr. Bakkali entered the Store, he was confronted in the vestibule by a female store employee (in a Walmart uniform) who came directly up to him, stating, "Jesus Christ is the only savior."

15.     Mr. Bakkali did not know this person and, prior to this encounter on March 25, 2019, had never seen or spoken to this individual.  It was later determined that this employee's first name is "Brenda."

16.     Mr. Bakkali was not dressed in a manner that would provide an indication of his religious affiliation; moreover, at no time during this initial encounter was Mr. Bakkali taking part in any prayer or other religious activity.

17.     Mr. Bakkali's skin tone and facial features are consistent with his race and ethnicity.

18.     From the beginning of this confrontation, Mr. Bakkali was very concerned about the employee's conduct.  Mr. Bakkali moved away from the employee; however, the employee persisted and continued to harass him. She repeated her previous statement directly to Mr. Bakkali,

2

"Jesus Christ is the only savior." At this point, Mr. Bakkali politely asked her to repeat herself and she did so, moving closer to him, repeated her prior statement for the third time and added, "Any other believers are wrong." Mr. Bakkali asked her to apologize and she refused, aggressively adding, "[Allah] is teaching you tough things to go around the world to do."

19.     This encounter took place in full view of the Customer Service desk, which was manned by at least three other Store employees. Inexplicably, not one of these employees stepped forward to address the conduct of their co-worker that Mr. Bakkali was subjected to and made no effort to intercede on his behalf.

20.     Shaken, Mr. Bakkali extricated himself from the confrontation, took his cart and tried to complete his shopping. As he proceeded through the store, however, he noticed that one of the Store employees that had been in the customer service area was now tracking him through the store. This surveillance frightened and upset Mr. Bakkali. While he had come to the store with a list of items to purchase for his limousine business, he was so distraught that he could not finish shopping and went to check out with only one item in his cart.

21.     At check out, Mr. Bakkali was so distressed by the harassment and surveillance that he could not make the purchase. He asked the checker for the name of the store manager and the checker pointed to a woman, one of the three individuals that had failed to act when Mr. Bakkali was being harassed by the Walmart employee. Mr. Bakkali went to speak to the manager who identified herself as "Megan." He recounted the harassment he suffered simply for his ancestry and ethnic characteristics.

22.     Megan, the store manager, made no effort to assist him, reprimand "Brenda" or take any action at all. As a result, Mr. Bakkali left the store. Due to the harassment and surveillance –

and the failure of any Walmart employees to take any corrective action – Mr. Bakkali was unable

to complete his purchase, the sole reason he had entered the Store on that date and time.

23.     Thereafter, on or about March 28, 2019, Mr. Bakkali contacted Walmart regarding

the discrimination he had suffered and received an initial response from "Emily" of the Global

Ethics Team indicating that he would receive a follow-up email in 2-3 business days.

24.     On April 2, 2019, Mr. Bakkali received an email from "Dawn" of Walmart Global

Ethics.  The email, which is attached as Exhibit 1, made it clear that the Walmart Global Ethics

team had no intention of taking any action on behalf of Mr. Bakkali; rather, they simply referred

his case back to the offending store, advising that his "concerns" had been relayed and were "best

reviewed and handled" by the store manager, Christine Facenda.  Not surprisingly, Ms. Facenda

never contacted Mr. Bakkali.

25.     Notably, the April 2, 2019 email to Mr. Bakkali cited and relied upon the Walmart

"Statement of Ethics" and provided a link to review this policy.   Under "Discrimination and

Harassment Prevention," Walmart makes the following statement (emphasis added):

> One of the basic beliefs upon which Sam Walton founded our company is
> "respect for the individual." Each of us is responsible for creating a culture
> of trust and respect that promotes a positive work environment. This means
> treating one another with fairness and courtesy in all of our interactions in
> the workplace. We are committed to maintaining a diverse workforce and
> an inclusive work environment. *Walmart prohibits discrimination in*
> *employment, employment-related decisions or in business dealings on the*
> *basis of an individual's race, color, ancestry, age, sex, sexual orientation,*
> *religion, disability, ethnicity, national origin, veteran status, marital*
> *status, pregnancy or any other status protected by law or local policy*. We
> should provide an environment free of discrimination to our associates,
> *customers*, members and suppliers.

26.     Walmart employees violated the above-referenced policy in their discrimination of

Mr. Bakkali based on his race, ancestry and ethnicity.

## FIRST CAUSE OF ACTION

### Violation of 42 U.S.C. Section 1981
### (Racial/Ethnic Discrimination)

27.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

28.    As described herein, Defendant's conduct constituted discrimination because of Plaintiff's race and ethnic ancestry in violation of Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981, *et seq.* ("Section 1981" or "§1981)

29.    Section 1981 provides, in relevant part:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

30.    For purposes of §1981, race is to be interpreted broadly and may encompass ancestry or ethnic characteristics; "Congress intended to protect from discrimination identifiable

classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 613 (1987).

31.   In this consumer setting, Plaintiff suffered harassment and discrimination first, on his entrance to the Store and thereafter, as he attempted to purchase the items he had entered the Store to procure.

32.   Plaintiff attempted to make his "contract," *i.e.*, find and purchase the goods he entered the Store to procure, in the face of impermissible conduct, discriminatory language and surveillance without justification.  While he attempted to complete this purchase, he was prevented from doing so by the conduct of multiple Walmart employees.

33.   It is well established that §1981 protects all individuals because of their (1) race; (2) ancestry; and (3) ethnic characteristics. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987).

34.   Plaintiff was first singled out for his race or ethnic appearance when he entered the Store and then subjected to further discrimination because of his race or ethnicity during the illegal surveillance conducted by Store employees.

35.   While Plaintiff attempted to complete at least a portion of his purchase, the cumulative conduct by Store employees prevented him from doing so.

36.   Through Walmart's discriminatory conduct, Plaintiff was deprived of his right to make and enforce contracts on the same terms as enjoyed by white persons, in violation of 42 U.S.C. §1981, *et seq.*

37.   In addition, Walmart is liable for its employees' actions under the doctrine of *respondeat superior*.

## SECOND CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

38.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.     The Walmart employees engaged in extreme and outrageous conduct by the harassing conduct Plaintiff was forced to endure.

40.     Defendant's actions intentionally, or in the alternative, recklessly caused Plaintiff severe emotional distress.

41.     In addition, Walmart is liable for its employees' actions under the doctrine of *respondeat superior*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief in his favor and against Defendant, as follows:

A.     Enter a declaratory judgment finding that the foregoing actions of Defendant violate 42 U.S.C. §1981, *et seq.*

B.     Award Plaintiff compensatory damages in an amount to be determined at trial that would fully compensate him for the humiliation, embarrassment, and mental and emotional distress caused by Defendant's conduct;

C.     Award punitive damages to Plaintiff in an amount to be determined at trial that would punish Defendant for its willful, wanton, and reckless conduct alleged herein and that would effectively deter Defendant from engaging in similar conduct in the future;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff prays for a jury trial on all issues and in all proceedings so triable.

Dated: July 14, 2020                            Respectfully submitted,

                                                BRODSKY & SMITH, LLC
                                                Marc L. Ackerman (PA Bar No. 56294)
                                                Ryan P. Cardona (Pa Bar No. 316350)
                                                Two Bala Plaza, Suite 805
                                                Bala Cynwyd, PA 19004
                                                Tel: (610) 667-6200
                                                Fax: (610) 667-9029
                                                mackerman@brodskysmith.com
                                                rcardona@brodskysmith.com

                                                *Attorneys for Plaintiff*

8