```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MOHSSIN BAKKALI                :
                               :   CIVIL ACTION
          Plaintiff            :
                               :
      vs.                      :   NO. 20-CV-3440
                               :
WALMART, INC.                  :
                               :
          Defendant            :
```

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                           **September 14, 2020**

This civil rights action is now before this Court on Motion of the Defendant, Walmart, Inc. to Dismiss the Plaintiff's Complaint in its entirety for failure to state a claim upon which relief can be granted.  For the reasons set forth in the paragraphs which follow, the motion shall be granted in part.

**Statement of Relevant Facts**

This case has its origins in a visit to a Walmart Store (Store No. 5649) located in Warrington, Bucks County, Pennsylvania on March 25, 2019.  On that date, Plaintiff Mohssin Bakkali, a naturalized United States Citizen who was born in Morocco and raised Muslim, went to the Warrington Walmart Store dressed for work in a three-piece suit and wearing "a knit cap

due to the cool temperatures," to purchase several items for his limousine business. (Pl's Compl., ¶s 10-13). Upon entry to the store, Plaintiff alleges that he was confronted in the vestibule by a female Walmart employee who came directly up to him and stated: "Jesus Christ is the only savior." (Compl., ¶14). Plaintiff avers that he moved away from this employee, (whose name he later discovered was "Brenda") but she "persisted and continued to harass him," … "repeated her previous statement directly to [him]." At that point, Plaintiff "politely asked her to repeat herself and she did so, moving closer to him," repeating her prior declaration that "Jesus Christ is the only savior" and adding that "any other believers are wrong." (Compl., ¶18). Plaintiff further alleges that he "asked her to apologize and she refused, aggressively adding "[Allah] is teaching you tough things to go around the world to do." (Id.)

According to the plaintiff, "[t]his encounter took place in full view of the Customer Service desk, which was manned by at least three other Store employees." (Compl., ¶19). None of these other employees, however, stepped forward or made any attempt to intercede with Brenda. (Id.) Mr. Bakkali goes on to aver that he then extricated himself from this conversation, took his cart and attempted to do his shopping but as he was walking through the store, he noted that one of the employees that had been in the Customer Service area was following him

through the store. (Compl., ¶20).  "This surveillance frightened and upset" him such that while he had come to the store with a list of items to purchase, "he was so distraught that he could not finish shopping and went to check out with only one item in his cart."  (Id.)  At checkout, however, Plaintiff alleges that he "was so distressed by the harassment and surveillance that he could not make the purchase.  He asked the checker for the name of the store manager and the checker pointed to a woman, one of the three individuals that had failed to act when [he] was being harassed by the Walmart employee."  (Compl., ¶21).  Plaintiff went to speak with the manager, who identified herself as "Megan," recounted the harassment he suffered simply, he felt, because of his ancestry and ethnic characteristics, but Megan made no effort to assist him, reprimand Brenda or take any action at all.  (Compl., ¶s 21-22).  Plaintiff left the store unable to complete his purchase.  (Compl., ¶22).

    Plaintiff contacted Walmart a few days later to complain about the discriminatory treatment he had received at the Warrington store and received an email from one "Emily" of the Global Ethics Team informing him that he would receive a follow-up email in 2 - 3 business days.  Subsequently, on April 2, 2019, Plaintiff received a second email from "Dawn" also of Walmart's Global Ethics group.  Dawn's correspondence made it clear to Plaintiff that "the Walmart Global Ethics team had no

intention of taking any action" on Plaintiff's behalf as "they simply referred his case back to the offending store, advising that his 'concerns' had been relayed and were 'best reviewed and handled' by the store manager, Christine Facenda," who "not surprisingly" never contacted him.  (Compl., ¶s 23-24).

As a consequence of this incident, Plaintiff commenced this suit on July 14, 2020 pursuant to Section 1981 of the Civil Rights Act of 1866, as amended, 42 U.S.C. §1981, *et. seq.* and under Pennsylvania state common law for intentional infliction of emotional distress.  Defendant now moves to dismiss the complaint in its entirety on the grounds that Plaintiff has failed to state a cause of action under Section 1981 insofar as religion is not a protected trait under that statute and the complaint fails to aver that Plaintiff was actually prevented from entering into a contract on the basis of his race or ethnicity and because there are no averments that Plaintiff suffered any physical injury as a result of the purportedly intentional infliction of emotional distress.

### **Standards Governing Rule 12(b)(6) Motions to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  <u>Renfro v. Unisys Corp.</u>, 671 F.3d 314, 320 (3d Cir. 2011); <u>Rittenhouse Entertainment, Inc. v. City of Wilkes-Barre</u>, 861 F. Supp. 2d

470, 478 (M.D. Pa. 2012).  In reviewing a challenged pleading, the district courts should view the allegations in the light most favorable to and draw all reasonable inferences in the non-movant's favor.  Doe v. University of the Sciences, 961 F.3d 203, 210, n.3 (3d Cir. 2020); Ebert v. Prime Care Medical, Inc., No. 14-2020, 2015 U.S. App. LEXIS 1843 at *4 (3d Cir. Feb. 5, 2015); Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir. 2002).  In so doing, reliance is placed upon the complaint, attached exhibits, and matters of public record.  Ebert, supra, (quoting Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007)).

Because Fed. R. Civ. P. 8(a)(2) requires a showing, rather than a blanket assertion, of entitlement to relief, courts evaluating the viability of a complaint must look beyond conclusory statements and determine whether the complaint has alleged enough facts to state a claim to relief that is plausible on its face.  Bell Atlantic v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007).  Indeed, it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts "to raise a right to relief above the speculative level." Umland v. Planco Financial Services, Inc., 542 F.3d 59, 64 (3d Cir. 2008)(quoting Philips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Examination of the context of the claim, including the underlying substantive law is therefore necessary in order to properly assess plausibility. Renfro, 671 F.3d at 321(citing In re Insurance Brokerage Antitrust Litigation, 618 F.3d 300, 320, n. 18 (3d Cir. 2010)).

## Discussion

*A. Plaintiff's Section 1981 Discrimination Claim*

Plaintiff first submits that the treatment which he received at the Warrington Walmart was unlawfully discriminatory in contravention of 42 U.S.C. Section 1981. That statute, entitled "Equal Rights Under the Law" reads:

> **(a) Statement of equal rights.** All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.
>
> **(b) "Make and enforce contracts" defined.** For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.
>
> **(c) Protection against impairment.** The rights protected by this section are protected against impairment by

>  nongovernmental discrimination and impairment under color of State law.

By its express language then, "Section 1981 prohibits discrimination in the making and enforcement of contracts on the basis of race." Singh v. Walmart Stores, Inc., No. 98-CV-1613, 1999 U.S. Dist. LEXIS 8531, 1999 WL 374184 at *4 (E.D. Pa. June 10, 1999). "Section 1981, like Section 1982, reaches private conduct" and "was 'designed to eradicate blatant deprivations of civil rights' such as where 'a private offeror refused to extend to [an African-American], *solely because he is an [African-American]* the same opportunity to enter into contracts as he extends to white offerees.'" Comcast Corp. v. National Ass'n. of African American Owned Media, 140 S. Ct. 2009, 2016, 206 L. Ed.2d 356 (2020)(quoting General Building Contractors Ass'n. v. Pennsylvania, 458 U.S. 375, 388, 102 S. Ct. 3141, 73 L. Ed.2d 835 (1982)); CBOCS West, Inc. v. Humphries, 553 U.S. 442, 447, 128 S. Ct. 1951, 170 L. Ed.2d 864 (2008)(quoting Runyon v. McCrary, 427 U.S. 160, 173, 96 S. Ct. 2586, 49 L. Ed.2d 415 (1976)).  Moreover, Section 1981 can be violated only by intentional discrimination, so "[t]o prevail, a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." Comcast, 140 S. Ct. at 1019; General Building, 458 U.S. at 391.

It should be noted that "racial discrimination is that which singles out 'identifiable classes of persons solely because of their ancestry or ethnic characteristics.'" Rice v. Cayetano, 528 U.S. 495, 515, 120 S. Ct. 1044, 1056, 145 L. Ed.2d 1007 (2000)(quoting Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613, 107 S. Ct. 2022, 95 L. Ed.2d 582 (1987)). "For purposes of Section 1981, race encompasses ancestry or ethnicity," and its protections therefore extend to persons of Arabian ancestry, among others. St. Francis, id.

In addition, any claim brought under Section 1981 must initially identify an impaired "contractual relationship" under which the plaintiff has rights. Domino's Pizza, Inc. v. McDonald, 546 U.S. 470, 476, 126 S. Ct. 1246, 1249-1250, 163 L. Ed.2d 1069, 1075-1076 (2006). "Such a contractual relationship need not already exist, because Section 1981 protects the would-be contractor along with those who already have made contracts." Id. Stated otherwise, "Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship." Id,(citing Runyon v. McCrary, 427 U.S. at 172, 96 S. Ct. 2586. "Accordingly, Section 1981 prohibits discrimination in 'all phases and incidents' of a contractual

relationship," such that "scrutiny of certain behavior in the retail context preceding a sale" is included.  Withers v. Dick's Sporting Goods, 636 F.3d 958, 963 (8th Cir. 2011)(citing Rivers v. Roadway Express, Inc., 511 U.S. 298, 302, 114 S. Ct. 1510, 128 L. Ed.2d 274 (1994)("Section 101 of the Civil Rights Act of 1991 [amending Section 1981] provides that Section 1981's prohibition against racial discrimination in the making and enforcement of contracts applies to all phases and incidents of the contractual relationship…")

To state a claim under Section 1981, a plaintiff must show that (1) he is a member of a racial minority; (2) the defendant intentionally discriminated against him on the basis of race; and (3) the discrimination implicated one or more of the activities listed in the statute including the making or enforcing of a contract.  Hammond v. Kmart Corp., 733 F.3d 360, 362 (1st Cir. 2013); Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 756 (7th Cir. 2006); Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 569 (3d Cir. 2002).  "Section 1981's protections apply to 'all contracts,' which undoubtedly includes the sale of goods or services at retail establishments." Dorval v. Moe's Fresh Market, Civ. A. No. 2016-61, 2017 U.S. Dist. LEXIS 203839, 2017 WL 6347791 at *4, note 1 (D.V.I. Dec. 12, 2017)(quoting Sayed-Aly v. Tommy Gun, Inc., 170 F. Supp. 3d 771, 775-776 (E.D. Pa. 2016)).

Applying these principles to the matter at bar, we find that Plaintiff has pled enough facts to state a claim to relief under Section 1981 that is plausible on its face.  Indeed, Plaintiff's complaint alleges that he is Middle Eastern, born in Morocco and raised as a Muslim, that his skin tone and facial features are consistent with his race and ethnicity and that at the time of his encounter at the Warrington Walmart, he "was not dressed in a manner that would provide an indication of his religious affiliation" nor was he then and there "taking part in any prayer or other religious activity." (Compl., paragraphs 10, 16, 17).  Nevertheless, a Walmart employee whose name Plaintiff later learned was "Brenda" approached him unsolicited and told him that "Jesus Christ is the only savior," "any other believers are wrong," and that "Allah is teaching you tough things to go around the world to do."  (Compl., paragraph 18).  Although Plaintiff asked her to apologize, she refused and following this confrontation, several store employees began following him throughout the store, unsettling him to the point that he subsequently became so distraught that he could not finish shopping or complete his intended purchases.  While these averments do suggest that Brenda's goal in approaching Plaintiff may have been motivated by a religious animus, it was his racial characteristics that arguably caught her attention and caused her to approach him in the first place and which caused him to

be tracked throughout the store.  Plaintiff has therefore sufficiently alleged that he is a member of a racial minority (Moroccan Arabian), that he was the subject of discrimination based upon his ethnic appearance and that as a consequence of that discrimination, he was so intimidated as to have been unable to enter into a contract to purchase the items which he had gone to the store to buy for his limousine business.[1]  The motion to dismiss the first count of Plaintiff's complaint is therefore denied.

   B.  *Intentional Infliction of Emotional Distress*

   For his second cause of action, Plaintiff avers that the actions and inactions of the Walmart employees constituted extreme and outrageous harassment, were intentional and/or reckless and caused him severe emotional distress.  Plaintiff further submits that Walmart is liable for its employees' behavior under the theory of *respondeat superior.*  Defendant also moves to dismiss this claim on the grounds that it fails to plead a cause of action on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

---

[1] While it is true that to establish a right to relief, Plaintiff must show an intent to discriminate on the basis of race by the defendant, he is not required to show discriminatory intent at the motion to dismiss stage.  Bagic v. University of Pittsburgh, 773 Fed. Appx. 84, 86-87 (3d Cir. June 11, 2019).  Rather, he "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of it."  Id. (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009)).

"A claim for intentional infliction of emotional distress under Pennsylvania law requires four elements: '(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.'"  Miller v. Comcast, No. 18-1518, 724 Fed. Appx. 181, 182, 2018 U.S. App. LEXIS 13878 (3d Cir. May 25, 2018)(quoting Bruffet v. Warner Communications, Inc., 692 F.2d 910, 914 (3d Cir. 1982)).  "It has not been enough that the defendant acted with intent which is tortious or even criminal or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort."  Hoy v. Angelone, 554 Pa. 134, 151, 720 A.2d 745, 754 (1998)(quoting Daughen v. Fox, 372 Pa. Super. 405, 412, 539 A.2d 858, 861 (1988) and *Restatement (Second) of Torts* Section 46, comment d).  Rather, "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."  Id, (quoting Buczek v. First National Bank of Mifflintown, 366 Pa. Super. 551, 558, 531 A.2d 1122, 1125 (1987)).  It is for the court to determine, in the first instance, whether the defendant's conduct can reasonably be regarded as so extreme and outrageous so as to

permit recovery and "[t]he liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."  Dawson v. Zayre Department Stores, 346 Pa. Super. 357, 359, 499 A.2d 648 (1985)(citing *Restatement (Second) of Torts,* Section 46, comment (h)).  Finally, to state a claim, physical harm must accompany the emotional distress.  John v. Philadelphia Pizza Team, Inc., 2019 PA Super 141, 209 A.3d 380 (Pa. Super. 2019)(citing Armstrong v. Paoli Memorial Hospital, 430 Pa. Super. 36, 44-45, 633 A.2d 605 (1993)).

In examining Plaintiff's complaint in the matter at bar, we must agree with Defendant that the conduct of which Plaintiff complains, even when viewed in the light most favorable to Plaintiff, fails to rise to the level of outrageousness necessary to plead a cause of action for the tort of intentional infliction of emotional distress.  And, even in the event that we were to agree that the alleged harassment which Plaintiff suffered as a consequence of Brenda's remarks and the tracking and/or in-store surveillance of the other Walmart employees was sufficiently atrocious, the complaint is wholly silent as to what physical injury/harm he suffered as a consequence. Accordingly, the motion to dismiss the second count of the complaint shall be granted.

An order follows.